1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6
7
8
9
10
11

SUZANNE MARIE BATEY,

                         Plaintiff,

          v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                         Defendant.

Case No. 3:14-cv-05264-KLS

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

12
13
14
15
16
17
18
19

        Plaintiff has brought this matter for judicial review of defendant's denial of her

applications for disability insurance and supplemental security income ("SSI") benefits. Pursuant

to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties

have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing

the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth

below, defendant's decision to deny benefits should be reversed and this matter should be

remanded for further administrative proceedings.

20
21

FACTUAL AND PROCEDURAL HISTORY

22
23
24
25
26

        On July 24, 2009, plaintiff filed an application for disability insurance benefits and

another one for SSI benefits, alleging in both applications she became disabled beginning

September 16, 2008. See ECF #12, Administrative Record ("AR") 21. Both applications were

denied upon initial administrative review and on reconsideration. See id. A hearing was held

before an administrative law judge ("ALJ") on January 27, 2011, at which plaintiff, represented

ORDER - 1

by counsel, appeared and testified, as did a vocational expert. See AR 37-70.

In a decision dated March 22, 2011, the ALJ determined plaintiff to be not disabled. See AR 21-31. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on March 27, 2012, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; 20 C.F.R. § 404.981, § 416.1481. After the Appeals Council issued its denial decision, plaintiff filed two more applications for disability insurance and SSI benefits, also alleging in both applications that she became disabled beginning September 16, 2008. See AR 519.

Plaintiff appealed defendant's decision to deny her initial applications to federal court, which on January 16, 2013, reversed that decision and remanded this matter for further administrative proceedings. See AR 625-39. On remand, a second hearing was held before the same ALJ, at which plaintiff, represented by counsel, appeared and testified, as did a psychological expert and a vocational expert. See AR 550-77. In a decision dated November 29, 2013, the ALJ again determined plaintiff to be not disabled.[1] See AR 519-40.

It does not appear from the record that the Appeals Council assumed jurisdiction of the case, making the ALJ's decision the Commissioner's final decision. See 20 C.F.R. § 404.984, § 416.1484. On May 28, 2014, plaintiff filed a complaint in this Court seeking judicial review of that decision. See ECF #1. The administrative record was filed with the Court on June 5, 2014. See ECF #12. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for an award of benefits, because the ALJ erred: (1) in evaluating the opinions of James J.

---

[1] The ALJ also merged plaintiff's initial and subsequent applications. See AR 519.

ORDER - 2

Nakashima, M.D., Lisa Doherty, M.D., and Robert E. Schneider, Ph.D.; (2) in discounting plaintiff's credibility; (3) in assessing plaintiff's residual functional capacity; and (4) in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. For the reasons set forth below, the Court agrees the ALJ erred in evaluating the opinion of Dr. Schneider, in assessing plaintiff's residual functional capacity and in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy, and therefore in determining plaintiff to be not disabled. Also for the reasons set forth below, however, the Court finds that while defendant's decision to deny benefits should be reversed on this basis, this matter should be remanded for further administrative proceedings.

<u>DISCUSSION</u>

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986); <u>see</u> <u>also</u> <u>Batson v. Commissioner of Social Security Admin.</u>, 359 F.3d 1190, 1193 (9th Cir. 2004); <u>Carr v. Sullivan</u>, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing <u>Brawner v. Secretary of Health and Human Services</u>, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (citation omitted); <u>see</u> <u>also</u> <u>Batson</u>, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported

ORDER - 3

by more than a scintilla of evidence, although less than a preponderance of the evidence is

required." <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence

admits of more than one rational interpretation," the Commissioner's decision must be upheld.

<u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence

sufficient to support either outcome, we must affirm the decision actually made.") (quoting

<u>Rhinehart v. Finch</u>, 438 F.2d 920, 921 (9th Cir. 1971)). [2]

I.       The ALJ's Evaluation of Dr. Schneider's Opinion

The ALJ is responsible for determining credibility and resolving ambiguities and

conflicts in the medical evidence. <u>See</u> <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998).

Where the medical evidence in the record is not conclusive, "questions of credibility and

resolution of conflicts" are solely the functions of the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639,

642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." <u>Morgan v.</u>

<u>Commissioner of the Social Sec. Admin.</u>, 169 F.3d 595, 601 (9th Cir. 1999). Determining

whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at

all) and whether certain factors are relevant to discount" the opinions of medical experts "falls

within this responsibility." <u>Id.</u> at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

"must be supported by specific, cogent reasons." <u>Reddick</u>, 157 F.3d at 725. The ALJ can do this

---

[2] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that
> which the [Commissioner] reached. If the [Commissioner]'s findings are supported by
> substantial evidence, the courts are required to accept them. It is the function of the
> [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may
> not try the case de novo, neither may it abdicate its traditional function of review. It must
> scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are
> rational. If they are . . . they must be upheld.

<u>Sorenson</u>, 514 F.2d at 1119 n.10.

ORDER - 4

"by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record."

<u>Id.</u> at 830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

With respect to the opinion evidence from Dr. Schneider, the ALJ found:

> In a June 16, 2009, consultative psychological evaluation by Robert E. Schneider, Ph.D., gives [sic] a comprehensive assessment of the claimant (1F). In this evaluation, the claimant described a traumatic personal history with a great deal of abuse, significant physical limitations, and an exceptional level of pain, combining to render her unable to function. The claimant reported not being previously aware that she was depressed, but reported great anxiety, disturbed sleep, nothing enjoyable in life, and difficulty concentrating. She also reported losing the community service job, which required her to work 21 hours a week, that she described in her first hearing testimony due to problems with her emotional demeanor, not due to fatigue as she alleged at the hearing. She also told Dr. Schneider that she was required to do this job because this was the only way she could get TANF (welfare financial support). The diagnoses were dysphoria versus depression not otherwise specified, and a personality disorder not otherwise specified, with passive aggressive, passive dependent, personality features, and likely borderline characteristics. In testing, both intelligence and intellectual problem solving abilities were in the solid average range, and there was no evidence of any significant impairment on mental status. However, in discussing the MMPI-2 profile, Dr. Schneider explained that the claimant experiences herself as a victim of life and others; emotional response to problems; exaggerated focus on somatic problems; and a considerable disability identity. Despite being convinced that she is disabled, the claimant was able to work and go to school while taking care of her daughter, because she was required to work to maintain TANF. The psychologist noted that the claimant is able to focus fairly well and process information as long as she is not reacting to emotional issues. He identified the major issue as that of being very controlling, now using symptoms and victim status as a way to control others, and he indicated that the claimant would be able to perform gainful employment when stabilized on appropriate medications. This opinion, which views the claimant impartially, attempts the challenging task of assessing differing symptoms and allegations. Dr. Schneider is professional and this opinion is given some weight.

AR 534-35. Plaintiff argues the ALJ erred in stating he was giving only some weight to Dr. Schneider's opinion, because no rationale for rejecting it was provided. The Court agrees. The ALJ did not give any reasons for declining to adopt that opinion, merely noting instead that Dr. Schneider viewed plaintiff "impartially", attempted "the challenging task of assessing differing symptoms and allegations" and was "professional", none of which explain why the opinion was

ORDER - 6

not adopted. AR 535; see also Garrison v. Colvin, 759 F.3d 995, 1012-13, (9th Cir. 2014) ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.") (citing Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir.1996)). As such, the Court finds the ALJ's evaluation of Dr. Schneider's opinion to be insufficient.

II.      The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id. It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related

ORDER - 7

functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In terms of plaintiff's mental residual functional capacity, the ALJ found she could do "**simple entry level work in a routine environment**." AR 525. But as discussed above, the ALJ failed to provide sufficient reasons for rejecting the opinion of Dr. Schneider, which assesses mental functional limitations not adopted by the ALJ. It thus is far from clear that the ALJ's residual functional capacity assessment completely and accurately describes all of plaintiff's mental functional limitations. Accordingly, that assessment cannot be said to be supported by substantial evidence or free of error.

III.    The ALJ's Step Five Determination

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id.

(citations omitted).  The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing the same mental limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 573. In response to that question, the vocational expert testified that an individual with that limitation – and with the same age, education and work experience as plaintiff, as well as the other functional limitations the ALJ adopted – would be able to perform other jobs. See AR 572-75. Based on the vocational expert's testimony, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy at step five of the sequential disability evaluation process. See AR 538-39. But because of the ALJ's errors in evaluating Dr. Schneider's opinion and therefore in assessing plaintiff's RFC, the ALJ's hypothetical question cannot be said to completely and accurately describe all of plaintiff's mental functional limitations , and thus the ALJ's reliance on the vocational expert's testimony to find plaintiff not disabled cannot be upheld.

IV.    This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further

ORDER - 9

administrative proceedings would serve no useful purpose." <u>Smolen</u>, 80 F.3d at 1292; <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

<u>Smolen</u>, 80 F.3d 1273 at 1292; <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to plaintiff's mental functional limitations and her mental residual functional capacity, as well as her ability to perform other jobs existing in significant numbers in the national economy, remand for further consideration of those issues is warranted.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 17th day of October, 2014.


Karen L. Strombom
United States Magistrate Judge

ORDER - 10